UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARUIS PRICE,<br><br>    Plaintiff,<br><br>v.<br><br>MCGEE AIR SERVICES, INC.,<br><br>    Defendant. | Case No. 23-cv-02705-HSG<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 11 |

Pending before the Court is Plaintiff Darius Price's motion to remand based on lack of subject matter jurisdiction. Dkt. No. 11. The Court heard argument on the motion. For the reasons detailed below, the Court **DENIES** the motion.

## I. BACKGROUND

Plaintiff initially filed this putative class action in San Mateo Superior Court in January 2023. *See* Dkt. No. 1-1, Ex. A. Plaintiff amended the complaint in March 2023, alleging that Defendant McGee Air Services, Inc. improperly rounded employees' time records such that they were not paid for all hours worked. *See* Dkt. No. 1-1, Ex. K ("FAC") at ¶ 10. Moreover, Plaintiff contends that employees' workloads sometimes prevented them from taking proper rest periods, and Defendants failed to include bonuses and other pay when calculating meal period premiums. *Id.* at ¶¶ 11–12. Based on these allegations, Plaintiff brings multiple claims for: (1) failure to pay minimum wages; (2) failure to pay meal period premiums at the regular rate of compensation; and (3) rest period violations; as well as derivative claims for (4) wage statement violations; (5) waiting time penalties; (6) violations of California's Unfair Competition Law; and (7) PAGA Civil Penalties. *Id.* at ¶¶ 22–53.

As relevant to the pending motion, the FAC does not provide an estimate of the requested

1 damages based on these claims. Nevertheless, Defendant removed this action to federal court in
2 May 2023. *See* Dkt. No. 1. The parties dispute whether removal was proper. Specifically,
3 Plaintiff argues that Defendant has not adequately established that the $5 million amount-in-
4 controversy requirement for jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"),
5 28 U.S.C. § 1332(d), is met here. *See* Dkt. No. 11.

## II.     LEGAL STANDARD

A suit may be removed from state court to federal court only if the federal court would have had subject matter jurisdiction over the case. *See* 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

CAFA vests district courts with original jurisdiction over civil actions in which the amount in controversy exceeds $5 million, there is minimal diversity of citizenship between the parties, and the action involves at least 100 class members. *See* 28 U.S.C. § 1332(d). Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6). A defendant claiming federal jurisdiction under CAFA bears the burden of establishing that the amount in controversy exceeds $5 million by a preponderance of the evidence. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

## III.    DISCUSSION

The only issue here is whether Defendant has established by a preponderance of the evidence that the $5 million amount-in-controversy requirement is met. *See* Dkt. No. 11.

In support of its opposition to the motion to remand, Defendant submitted a declaration from its Managing Director of Finance, Marie Underwood. *See* Dkt. No. 12-1 ("Underwood Decl."). The declaration provides high-level information such as the number of McGee's non-exempt employees in California from February 2021 onward; the number of workweeks worked on average by these employees; and the number of such employees who quit or were discharged

1  from their employment since February 2021. *See id.* at ¶¶ 3–11. Ms. Underwood also confirms
2  that McGee always paid its non-exempt employees in California at least the California minimum
3  wage rate, and that McGee used the same timekeeping system since at least February 2021. *Id.* at
4  ¶¶ 9, 11. Based largely on this declaration, Defendant urges that the amount in controversy here
5  "easily exceeds" $5 million. *See* Dkt. No. 12 at 8.

6        Although Defendant's showing is hardly overwhelming, the Court finds that it has
7  established by a preponderance of the evidence that the amount in controversy based on the
8  alleged waiting time penalties alone exceeds $5 million.

9        Under California Labor Code § 203(a), "[i]f an employer willfully fails to pay . . . any
10 wages of an employee who is discharged or who quits, the wages of the employee shall continue
11 as a penalty from the due date thereof at the same rate until paid or until an action therefor is
12 commenced; but the wages shall not continue for more than 30 days." Cal. Labor Code § 203(a).
13 The California Court of Appeal has explained that § 203 "is designed to compel the prompt
14 payment of earned wages . . . ." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492 (Cal. Ct. App.
15 1998), *as modified* (Dec. 11, 1998) (quotation omitted). Accordingly, the statute "mandates a
16 penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a
17 total of 30 days." *Id.* at 493.

18       Here, Defendant argues that it is reasonable to assume that every discharged or quitting
19 employee had at least *some* allegedly unpaid wages, and therefore would be entitled to waiting
20 time penalties for up to 30 days if Plaintiff were to prevail. *See* Dkt. No. 12 at 15–16. The Court
21 agrees that this is a reasonable extrapolation from the Underwood Declaration and the allegations
22 in the complaint. Plaintiff alleges, for example, that Defendant required employees to clock in and
23 out using an electronic or digital timekeeping system, which recorded the hours that employees
24 worked to the minute. *See* FAC at ¶ 10. Plaintiff further alleges that Defendant had a policy and
25 practice of rounding these time records in a way that underestimated the number of hours that
26 employees worked. *Id.* For example, the FAC alleges that on a single day in March 2022,
27 Plaintiff clocked in at 3:56 p.m. and clocked out for the day at 12:32 a.m. *Id.* However,
28 Defendant allegedly rounded his clock-in time to 4:00 p.m. and his clock out time to 12:30 a.m.,

3

1   underpaying Plaintiff by 6 minutes. *Id.* Plaintiff further alleges that during this specific week,
2   Defendants "underpaid Plaintiff by about 18 minutes due to this rounding/time-shaving practice."
3   *Id.* The Underwood Declaration confirmed that Defendant "used the same timekeeping system to
4   record [employees'] hours worked since at least February 7, 2021." *See* Underwood Decl. at ¶ 11.
5   And Plaintiff contends that the failure to pay employees for all their time is a common question
6   that "stem[s] from Defendants' policies and/or practices applicable to each individual class
7   member . . . ." FAC at ¶¶ 18, 26. Plaintiff suggests that underpayment was so pervasive that it is
8   appropriate to certify a "waiting time class" of former employees. *Id.* at ¶ 15.

   Although Defendant does not present evidence of the exact amount of time employees were purportedly undercompensated, the Court does not find this level of detail necessary given the nature of this particular claim. A reasonable interpretation of the FAC is that Defendant's rounding policy affected every putative class member at least once during the course of their employment such that at the time employees quit or were discharged, they were not paid all their owed wages. *Accord Amezcua v. CRST Expedited Inc.*, No. 4:22-CV-06501-YGR, 2023 WL 2002085, at *6–7 (N.D. Cal. Jan. 31, 2023) ("It is not unreasonable to assume that a 'policy' that plaintiff alleges was enforced was enforced most of the time.") (collecting cases); *Salonga v. Aegis Senior Communities, LLC*, No. 22-CV-00525-LB, 2022 WL 1439914, at *4–6 (N.D. Cal. May 6, 2022) (finding a 100% violation rate reasonable for waiting time penalty claims for terminated employees). For purposes of assessing the amount at issue in the lawsuit, the waiting time penalties under § 203 thus would apply to any employee who quit or was discharged during the relevant timeframe.

   Defendant calculates waiting time penalties as follows:

- Employees were all paid at least California's minimum wage of $14 an hour from February 2021 to December 2021, and $15 an hour from January 2022 onward. *See* Underwood Decl. at ¶ 9. And employees generally worked 8 hour workdays. *See id.* at ¶ 5.

- Between February and December 2021, 566 putative class members quit or were discharged. *Id.* at ¶ 10. And between January 2022 and December 22, 2022 (33 days prior to the filing of this action), at least 895 putative class members quit or were discharged. *Id.*
- 566 discharged or quitting employees x $14 per hour x 8 hours per day x 30 days = **$1,901,760.**
- 895 discharged or quitting employees x $15 per hour x 8 hours per day x 30 days = **$3,222,00.**
- $1,901,760 + $3,222,00 = **$5, 123, 760.00**

Although Plaintiff urges that Defendant has not sufficiently substantiated its assumptions, Plaintiff does not substantively dispute the calculations above. *See* Dkt. No. 14 at 3–7. And having reviewed the record in detail, this does not appear to be a case in which Defendant is simply pulling assumptions "out of thin air," at least as it relates to the waiting time penalties. *See Rutledge v. Healthport Technologies, LLC*, No. 16-cv-06920-VC, 2017 WL 728375, at *1 (N.D. Cal. Feb. 24, 2017) (citing *LaCross v. Knight Transportation Inc.*, 775 F.3d 1201, 1202–03 (9th Cir. 2015)). The Court finds that Defendant's calculations are based on sufficient information provided in Ms. Underwood's declaration and on reasonable assumptions drawn from the allegations in the FAC. Defendant has therefore met its burden of establishing the $5 million amount in controversy by a preponderance of the evidence.

**IV. CONCLUSION**

The Court **DENIES** the motion to remand. The Court further **SETS** a case management conference on December 5, 2023, at 2:00 p.m. All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom

deputy.  For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.  The Court further **DIRECTS** the parties to meet and confer and submit a revised joint case management statement, including a proposed case schedule through a class certification hearing, by November 28, 2023.

**IT IS SO ORDERED.**

Dated:   11/1/2023

*Haywood S. Gilliam, Jr.*

HAYWOOD S. GILLIAM, JR.

United States District Judge